IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **COALITION FOR LIFE ST. LOUIS,** dba **COALITION LIFE,** | : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 3:23-cv-1651 |
| **CITY OF CARBONDALE, ILLINOIS,** | : : : | |
| Defendants. | : | |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT**

Plaintiff, by and through counsel, complains of Defendant as follows:

**INTRODUCTION**

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the actions of Defendant City of Carbondale, Illinois (hereafter, "City") and its agents with respect to Plaintiff Coalition Life's expressive activities on the public ways of the City. Coalition for Life St. Louis dba Coalition Life ("Coalition Life") seeks a declaration that the City's Ordinance no. 2023-03, codified in the City's Disorderly Conduct Ordinance as § 14-4-2(H) (the "Bubble Zone Ordinance" or "Ordinance"), on its face violates the First and Fourteenth Amendments to the United States Constitution, and an injunction prohibiting the City from enforcing the Ordinance.

2. Plaintiff also seeks a declaration that subsection (H) is unconstitutional on its face, as well as permanent injunctive relief, under the Illinois Constitution.

3. Plaintiff Coalition Life is a non-profit organization headquartered in St. Louis, Missouri dedicated to ending abortion peacefully and prayerfully. Its sidewalk counselors and prayer volunteers have helped save hundreds of children from abortion since 2011 and have positively

impacted thousands of men and women. Its sidewalk counselors are active in Carbondale, peacefully exercising their First Amendment rights on the public ways near two abortion facilities in the City by offering potential abortion customers help in finding better alternatives and serving to protect the pre-born child and the woman from the harms of abortion. Coalition Life wishes to continue to engage in its peaceful activities without undue interference from the City's Ordinance.

4. Defendant City of Carbondale, Illinois is a municipal corporation, duly organized under the laws and constitution of the State of Illinois, to act with governmental powers granted by statute and the state constitution.

## JURISDICTION AND VENUE

5. This action raises federal questions under the First and Fourteenth Amendments of the United States Constitution and under federal law, 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments), as well as 42 U.S.C. §§ 1983, 1988 and 1920.

6. This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

7. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3), the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Plaintiff's prayer for costs, including reasonable attorney's fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

8. Venue is proper in the Southern District of Illinois pursuant to 28 U.S.C. §1391 because the claims arose in this District and Defendant is located in this District.

**FACTUAL ALLEGATIONS**

9.      Plaintiff Coalition for Life St. Louis is a Missouri nonprofit corporation doing business as Coalition Life. Coalition Life and its sidewalk counselors counsel, educate, pray, display signs, distribute literature, and otherwise peacefully exercise their First Amendment rights on the public sidewalks and rights of way outside abortion facilities and elsewhere on the public ways in the City. They offer information and assistance to women approaching abortion facilities in order to inform and assist them in choosing alternatives to entering the facilities for abortions, as well as to express their deeply held religious convictions on a matter of great public concern, indeed, a matter of life and death.

10.     Coalition Life sidewalk counselors also attempt to engage potential abortion customers in a one-on-one conversation in a calm, intimate manner in order to offer information about the dangers involved in abortion and to offer alternatives to abortion and help in pursuing those alternatives.

11.     Coalition Life's sidewalk counselors' experience has shown that it is necessary to draw as near the women as possible so they can make eye-contact and speak from a normal conversational distance in a friendly and gentle manner. In their experience, counseling women who are considering whether to abort a child is a highly personal matter that requires a showing of genuine care and empathy on the part of the sidewalk counselor. In addition, the alternatives to abortion that are available differ depending on the individual with whom the counselor is speaking.

12.     Additionally, ambient noise from cars, trucks, emergency vehicles, and so forth, coupled with the interference of clinic "escorts" often make it difficult for Coalition Life's sidewalk counselors to effectively communicate their oral messages from distances greater than five feet.

13.     The counselors also attempt to hand literature to the women. They have found that standing near the path of pedestrians and incoming vehicles is essential so they can proffer their literature near the hands of passersby who can then easily accept them.

**The Ordinance**

14.     On January 10, 2023, the City of Carbondale enacted the Bubble Zone Ordinance, adding a new section to the Disorderly Conduct Ordinance. The Bubble Zone Ordinance became codified as Section 14-4-2(H). A copy of the Bubble Zone Ordinance is attached hereto as Exhibit 1. The Ordinance became effective the next day after it was enacted, January 11, 2023.

15.     The Ordinance creates a large buffer zone around "any entrance door" to a "hospital, medical clinic or healthcare facility" in the City. These buffer zones extend in a one hundred (100) foot radius in all directions from "any entrance door" to these facilities, thereby creating vast anti-speech zones in the public ways near numerous healthcare facilities throughout the City. Within the buffer zones, the Ordinance creates a bubble around persons inside the zone, prohibiting anyone from knowingly approaching within eight (8) feet of someone in the public way "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling" without that person's consent.

16.     Carbondale boasts that it is "the hub of medical care in the Southern Illinois region." (https://www.explorecarbondale.com/356/Hospitals-Healthcare). As such, the Ordinance imposes vast speech-restrictive buffer zones all over the city, despite the fact that the Ordinance was designed only to address perceived issues at the two newly operational abortion facilities in town. See Exhibit 2, attached, Agenda Item Details re Ordinance.

17. In fact, the City identified only two reasons for the Ordinance: (1) that there were now daily "protests" at "reproductive healthcare facilities" (i.e. abortion facilities); and (2) that there were calls for police assistance relating to (a) trespass and (b) disorderly conduct. *Id*.

18. Tellingly, there was no mention of violence, arrests, or even warnings related to unwanted approaches or harassment.

19. Additionally, although the Ordinance as recommended and submitted to the Council on the Agenda would have imposed a buffer zone of only fifty (50) feet, the Ordinance as adopted imposes a buffer zone of twice the radius at one hundred (100) feet. The City Attorney explained that the reason for the last-minute increase in the radius of the buffer zone was due to the fact that the layout of the two abortion facilities in Carbondale meant that a fifty-foot buffer zone "doesn't even get you off of the parking lot." See Video of City Council meeting of January 10, 2023, at 1:54:45 – 1:55:20, http://carbondaleil.swagit.com/play/01112023-771/. In other words, due to the rural or suburban nature of Carbondale, a buffer zone larger than the proposed 50 feet is necessary to reach the sidewalk counselors standing outside of the abortion facility parking lot in the public right of way.

20. Although not defined in the Ordinance, the City appears to have some 153 "hospitals, medical clinics, or healthcare facilities." See Exhibit 3, List of Healthcare Facilities. The Ordinance's 100-foot buffer zones around many of these healthcare facilities encompass vast stretches of public property in Carbondale. In fact, the Ordinance imposes significant restrictions in the public right of way around at least forty (40) healthcare facilities within the City, as shown in Exhibit 4, which contains aerial maps reflecting the extent of the 100-foot buffer zones emanating from the multiple entrance doors at these facilities.

21.     The anti-speech bubbles created by the Ordinance infringe the free speech rights of Coalition Life pro-life sidewalk counselors and others on the public streets and sidewalks without adequate justification.

22.     In fact, the City had no justification for the Ordinance at any location. Although dedicated pro-life advocates like Coalition Life sidewalk counselors have maintained a peaceful presence outside two abortion facilities for some time, there have been no mass blockades, no arrests, no convictions, and no violence.

23.     Moreover, the City Attorney refused to answer a straightforward question from one citizen concerning whether the Ordinance would prohibit an individual standing still within the buffer zone from engaging in oral protest, education, or counseling or offering literature, thereby subjecting such individual to possible arrest (or citation). Instead, the City Attorney asserted that the matter would have to be discussed with the police department and "would fall under the attorney-client privilege and needs to be explored on a case-by-case basis." See Video of City Council, at 1:56:04 – 1:56:24.

24.     The Ordinance, on its face, inflicts irreparable injury on the First and Fourteenth Amendment rights of Plaintiff and others.

25.     Defendants have and will continue to enforce the Ordinance through its officers, servants, agents, and employees, unless and until this Court issues injunctive relief, further infringing Plaintiff's constitutional rights.

26.     All of the acts of the City, its officers, servants, agents, and employees, as alleged herein, were done and are continuing to be done under color and pretense of the statutes, ordinances, regulations, policies, customs, and usages of the City of Carbondale and the State of Illinois.

## FIRST CAUSE OF ACTION
### Violation of the Rights of Freedom of Speech and of the Press
### Under the First Amendment to the U.S. Constitution

27. Coalition Life re-alleges and incorporates by reference the allegations in paragraphs 1-26 above.

28. The public ways and sidewalks affected by the Bubble Zone Ordinance's provisions are traditional public fora.

29. Coalition Life's pro-life political and religious speech lies at the core of the First Amendment.

30. The Bubble Zone Ordinance is overbroad on its face because it prohibits speech and expressive activities of Plaintiff and third parties not before the Court in the restricted areas, which are traditional public fora.

31. The Bubble Zone Ordinance is overbroad on its face because it prohibits speech in areas outside of all "healthcare facilities," even those that have had no expressive activities or difficulties of any kind in the past or that are unrelated to abortion.

32. The Bubble Zone Ordinance is overbroad on its face because it creates hundreds of speech-restrictive bubbles all over the City in areas and under circumstances in which the City has no alleged interest in restricting speech, and it repeatedly creates new bubbles whenever a physician's office or health care facility opens or relocates, regardless of the geographical layout or circumstances surrounding the facility.

33. The Bubble Zone Ordinance is overbroad on its face because within the buffer zones it prohibits individuals from approaching others without their consent whether an individual intends to enter a healthcare facility or not.

34. The Bubble Zone Ordinance is overbroad on its face because its speech restrictions apply within the buffer zone of a "healthcare facility" even when the facility is closed.

35. The Bubble Zone Ordinance is overbroad on its face because within its bubbles it prohibits most First Amendment protected leafleting, which is directed towards recipients who have neither given nor refused consent yet and are less than eight feet away from the person offering the leaflet.

36. As an unconstitutionally overbroad restriction on expressive activity, the Ordinance restricts far more speech than necessary to achieve any legitimate governmental interest.

37. The Bubble Zone Ordinance is an unconstitutional content-based restriction on speech because it targets only certain categories of speech; that is, passing a leaflet or handbill, displaying a sign, or engaging in "oral protest, education, or counseling," while leaving other speech, such as that directed at hindering the targeted speech, or panhandling requests, unregulated.

38. The Bubble Zone Ordinance is an unconstitutional content- and viewpoint-based restriction, because it was enacted for the purpose of restricting pro-life speech, but to permit unrestricted speech in favor of abortion or concerning topics and speakers not disfavored by the City.

39. The Bubble Zone Ordinance discriminates on its face against Plaintiff and others by prohibiting them from engaging in speech and other expressive activities in traditional public fora based solely upon the pro-life content and viewpoint of their speech.

40. The Bubble Zone Ordinance is an unconstitutional content- and viewpoint-based restriction on expression because it requires a government official, pursuant to unbridled discretion, to determine what speech and speakers are restricted by the Ordinance, what

constitutes an unlawful "approach," what is a "hospital, medical clinic or healthcare facility," what is "consent," and what is an "entrance door." For example, on its face, the Ordinance does not limit the 100-foot buffer zone to entrance doors used by clients, patients, or the general public, but applies indiscriminately to any entrance door. By its plain language, entrance doors used by staff and maintenance persons are also covered by the Ordinance, thereby restricting far more speech than necessary to achieve any legitimate governmental interest.

41.    The Bubble Zone Ordinance is an unconstitutional content-based restriction on expression because it unlawfully discriminates based on the content of the message conveyed. Public expression concerning labor relations is free of government regulation under the Illinois Labor Dispute Act, 820 ILCS 5/1 – 1.5, which prohibits any restraining order or injunction to be granted against those involved in a labor dispute who, in the public ways, attempt to obtain or communicate information or to persuade others "to work or to abstain from working." [1] and therefore those involved in a labor dispute who, within the 100-foot buffer zones, knowingly approaching within eight (8) feet of someone in the public way "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling"

---

[1] The Labor Dispute Act provides in relevant part:

> No restraining order or injunction shall be granted by any court of this State in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do.

820 Ill. Comp. Stat. Ann. 5/1. Moreover, Section 5/1.5 expressly preempts any local ordinance "that impose restrictions or limitations on the picketing of an employer in a manner inconsistent with this Act." *Id*. The Bubble Zone Ordinance therefore does not apply to those involved in labor disputes.

without that person's consent are exempted from the reach of the Bubble Zone Ordinance, while speech related to abortion is severely restricted.

42. The Bubble Zone Ordinance imposes an impermissible prior restraint on constitutionally protected speech because it restricts speech in advance of expression on the public ways and sidewalk areas outside health care facilities and other businesses but provides no criteria to guide decision-makers in determining what speech is permissible.

43. The Bubble Zone Ordinance's ban on free speech activities in the public ways and sidewalk areas outside healthcare facilities imposes an unconstitutional restriction on constitutionally protected speech in traditional public fora. Notably, the 100-foot buffer zones emanating from all of SIH Memorial Hospital's several entrance doors spill over across Main Street and into the public right of way in front of the Carbondale Public Library.  See Exhibit 4.

44. No compelling, substantial, or even legitimate governmental interest exists to justify the Bubble Zone Ordinance's restrictions on speech in traditional public fora.

45. The Bubble Zone Ordinance is not the least restrictive means to accomplish any permissible purpose sought to be served by the City, and the Ordinance restricts substantially more speech than necessary.

46. The Bubble Zone Ordinance is not narrowly tailored to serve any asserted legitimate interest of the City.

47. The Bubble Zone Ordinance on its face violates Coalition Life's rights to freedom of speech and of the press under the First and Fourteenth Amendments to the United States Constitution, as well as the rights of others not before the Court.

48.     In order to effectively communicate their message, Coalition Life's sidewalk counselors require a personal approach to persons in the public ways, and the Ordinance severely hinders this method of communication.

49.     Coalition Life has no adequate remedy at law for the violation of its federal constitutional rights.

WHEREFORE, Coalition Life respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## SECOND CAUSE OF ACTION
### Violation of Due Process under the Fourteenth Amendment to the U.S. Constitution

50.     Coalition Life re-alleges and incorporates by reference the allegations in paragraphs 1-49 above.

51.     The Bubble Zone Ordinance is an unconstitutionally vague restriction on speech on its face because it fails to adequately advise, notify, or inform persons subject to prosecution under its terms of its requirements, including the requirement as to what activities constitute an "approach" to persons and when such other person "consents."

52.     The Bubble Zone Ordinance is an unconstitutionally vague restriction on speech on its face because it fails to provide fair notice and warning to individuals as to when and under what circumstances the consent requirement applies and is satisfied.

53.     The Ordinance is unconstitutionally vague because it lacks any standards or criteria to guide those charged with enforcing it and thus gives government officials unbridled discretion to determine which speech activities are, and which are not, permissible within the bubbles it creates.

54. The Ordinance is an irrational and unreasonable policy, which imposes irrational and unreasonable restrictions on the exercise of Coalition Life's constitutional rights.

55. The City does not have a compelling, or even rational, reason to prevent Coalition Life from engaging in its constitutionally protected speech and expressive activities.

56. The Ordinance violates Coalition Life's due process rights on its face in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Coalition Life respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

### THIRD CAUSE OF ACTION
### Violation of the Illinois Constitution, Art. I, Sections 4 and 5

57. Coalition Life re-alleges and incorporates by reference the allegations in paragraphs 1-56 above.

58. Article I, Section 4 of the Illinois Constitution states: "All persons may speak, write and publish freely, being responsible for the abuse of that liberty." Section 5 states: "The people have the right to assemble in a peaceable manner, to consult for the common good, to make known their opinions to their representatives and to apply for redress of grievances."

59. Coalition Life's freedom of speech, freedom of the press, and freedom of assembly have been restrained by the Bubble Zone Ordinance, as set forth above.

60. Coalition Life has suffered and is suffering irreparable injury to its constitutional rights.

61. Coalition Life has no adequate remedy at law.

WHEREFORE, Coalition Life respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered in its favor and that relief be granted against Defendants as follows:

A. That this Court assume jurisdiction;

B. That the Court declare the Bubble Zone Ordinance unconstitutional on its face because it violates the rights of Plaintiff and others not before the Court to the freedoms of speech and of the press, as well as the rights to due process and equal protection, which are guaranteed to Plaintiff and others under the United States Constitution;

C. That the Court declare the Bubble Zone Ordinance unconstitutional on its face because it violates the rights of Plaintiff and others not before the Court to the freedoms of speech and of the press, as well as the rights to due process and equal protection, which are guaranteed to Plaintiff and others under the Illinois Constitution;

E. That the Court enter permanent injunctive relief against the Ordinance;

F. That the Court award Plaintiff nominal damages;

G. That the Court award Plaintiff its costs of litigation, including reasonable attorneys' fees and costs; and

H. That the Court grant such other and further relief as it deems just and proper.

FOR THE PLAINTIFF,

THOMAS MORE SOCIETY

/s/Peter Breen
Peter Breen, Lead Counsel
309 W Washington, Ste 1250
Chicago, IL 60606
Tel: (312) 782-1680
Fax: (312) 782-1887
pbreen@thomasmoresociety.org

Stephen M. Crampton*
P.O. Box 4506
Tupelo, MS  38803
Tel: (662) 255-9439
Fax: (662) 841-9646
scrampton@thomasmoresociety.org

*Counsel for Plaintiff*

\* *pro hac vice application to be filed*